

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| JANIE M. HARRISON, | § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 8:04-1350-HFF |
| CITY OF ANDERSON, ANDERSON CITY POLICE DEPARTMENT and CORPORAL CHRIS LEMMONS, OFFICER FIRST NAME UNKNOWN GRANDSTAFF, and RESERVE OFFICER COURTNEY WRIGHT, | § § § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

**I.    INTRODUCTION**

This is a civil rights action. In addition to the federal claim, Plaintiff alleges state claims of false arrest, false imprisonment, and slander. The Court has jurisdiction over this matter pursuant to Sections 1331 and 1367 of Title 28 of the United States Code.

Pending before the Court is Defendants' motion for summary judgment as to all causes of action. Having carefully considered the motion, the response, the record, and the applicable law, it is the judgment of the Court that Defendants' motion for summary judgment shall be granted.

## II.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court reviews the record by drawing all inferences most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The adverse party must show more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322-23.  Hence, the granting of summary judgment involves a three-tier analysis.  First, the Court determines whether a genuine issue actually exists so as to necessitate a trial.  Fed. R. Civ. P. 56(e).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  Second, the Court must ascertain whether that genuine issue pertains to material facts.

Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

**III.     FACTUAL AND PROCEDURAL HISTORY**

The underlying facts of this case are largely undisputed. This matter arises from the investigation of a reported shoplifting incident at the Target store in Anderson, South Carolina. The incident was reported to police dispatch on June 7, 2002 at 4:43 p.m. The suspect was described as a black female wearing a white tank top and blue jean shorts with her hair pulled up.

The suspect was reportedly seen walking through the parking lot of Ruby Tuesdays. Defendants Lemmons, Grindstaff, and Wright (collectively, "the individual defendants") responded to the call.[1]

---

[1] Sergeant Dennis Chapman also responded to the call. He, however, is not named in this suit.

3

Based on information provided by witnesses at Ruby Tuesdays, the individual defendants began to look for the suspect in a nearby shopping center that included the Gold Star Nail Salon.

At about the same time the shoplifting was reported, Plaintiff arrived in the nearby shopping center's parking lot for an appointment at the Gold Star Nail Salon. According to Plaintiff's deposition testimony, she was sitting beside the door of the salon at around 5:00 p.m. when Defendant Wright entered the salon and asked if anyone had entered the salon in the last ten (10) minutes. A few minutes later, Defendant Grindstaff entered the salon and asked if a black female, wearing shorts and a white top, had entered the salon. Receiving no response, Defendants Wright and Grindstaff left the salon.

At around 5:10 p.m., Plaintiff went over to her manicurist's table and sat down. At that point, she heard another customer say, "Nobody came in except for her," and then saw the customer speaking to one of the officers outside of the salon. (Pl's Depo. at 14:8-9.)

The individual defendants entered the salon and approached Plaintiff. When Defendant Lemmons asked to talk to her, she refused and asked him, "What is this about?" (*Id*. at 15:13.) He said: "If you'll step outside, I'll tell you." (*Id*. at 15:15.) She told him that she was not going outside and asked again, "What is this about?" (*Id*. at 15:19.) Defendant Lemmons then told her to wait until a Target employee arrived.

Shortly thereafter, a patrol car pulled through the parking lot with a Loss Prevention Officer from Target in the back seat. The Loss Prevention Officer shook his head, indicating that Plaintiff was not the alleged shoplifter. Defendant Lemmons looked at the car and said, "Negative." (*Id*. at 18:3.) The entire incident, from the time the officers first walked up to her until the Loss Prevention Officer in the patrol car said she was not the suspect, lasted approximately ten (10) to fifteen (15) minutes. Plaintiff never asked to leave, was never told that she was under arrest, and was never handcuffed.

Plaintiff told Defendant Lemmons that she wanted to see a supervisor, and Lieutenant Terry Mitchell was called to the salon. Defendants Lemmons and Wright then left. Plaintiff informed Defendant Grindstaff that she felt she had been singled out because she was the only black female in the nail salon. Defendant Grindstaff apologized for the incident and said that if he had believed she was the shoplifter when he first entered the salon and saw her that he would have asked her to step out then. Plaintiff then went back into the salon and finished her manicure. Lieutenant Mitchell came to the salon and met with her regarding her desire to file a complaint against the individual defendants.

Plaintiff filed suit on March 19, 2004, with the state court. The matter was subsequently removed to this Court on April 30, 2004. On July 28, 2005, Defendants filed a motion for summary judgment, to which Plaintiff filed her response on September 25, 2005.

**IV.     CONTENTIONS OF THE PARTIES**

Plaintiff argues that she was singled out simply because she was black. Moreover, according to Plaintiff, Defendants racially targeted and profiled Plaintiff for a crime she did not commit. Plaintiff also contends that Defendants singled her out as a suspect and convinced two white females in the salon that she had committed the theft. Plaintiff further argues that Defendants racially profiled her for no good reason, held her against her will and defamed her in front of her peers in the salon. Defendants deny Plaintiff's allegations.

**V.     DISCUSSION**

*A.     False arrest and false imprisonment*

To establish a claim for false imprisonment, the plaintiff must demonstrate that (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful. *Andrews v. Piedmont Air Lines*, 297 S.C. 367, 377 S.E.2d 127 (Ct. App. 1989).

False imprisonment is "deprivation of a person's liberty without justification." *Caldwell v. K-Mart Corp.*, 306 S.C. 27, 30, 410 S.E.2d 21, 23 (Ct. App. 1991). An action for false imprisonment may not be maintained where the plaintiff was arrested by lawful authority. *Jones v. City of Columbia*, 301 S.C. 62, 389 S.E.2d 662 (1990).

*1.     whether Defendants restrained Plaintiff*

Defendants argue that Plaintiff was not arrested and/or detained and, thus, dismissal is appropriate. For purposes of this motion, the Court finds that Plaintiff was, in fact, detained.

*2.     whether the restraint was intentional*

To the extent that Plaintiff was restrained, the Court also finds that such restraint was intentional.

*3.     whether the restraint was unlawful*

The primary issue in determining the lawfulness of an arrest is whether there was "probable cause" to make the arrest. *Wortman v. Spartanburg*, 310 S.C. 1, 4, 425 S.E.2d 18, 20 (1992). "Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise." *Id.*, 425 S.E.2d at 19. "In determining the presence of probable cause for arrest, the probability cannot be technical, but must be factual and practical considerations

of everyday life on which reasonable, prudent and cautious men, not legal technicians, act." *Summersell v. South Carolina Dep't of Pub. Safety*, 334 S.C. 357, 365, 513 S.E.2d 619, 623 (Ct. App.1999). The issue of probable cause is a question of fact and ordinarily one for the jury. *Wortman*, 310 S.C. 1, 425 S.E.2d 18.

In the case at bar, however, the Court is confronted, not with an arrest, but what is more accurately viewed as an investigatory detention.[2] An investigatory detention does not violate constitutional standards if the officer has a reasonable articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). A reasonable suspicion exists when law enforcement officers possess "a particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). The propriety of an investigative detention under *Terry* turns on two inquiries--whether an officer's action was justified at its inception, and whether the scope of the detention was reasonably related to the circumstances justifying the interference. *Terry*, 392 U.S. at 20.

When the individual defendants confronted Plaintiff, they were investigating a shoplifting that had allegedly occurred just minutes earlier at the nearby Target store. The suspect, a black female, was wearing a white tank top and had last been observed walking toward the shopping center in which the Gold Star Nail Salon was located. Two female customers in the salon had told the individual defendants that Plaintiff, a black female, had come into the salon just moments before the individual defendants had arrived, that she had changed clothes, and that she was wearing a white tank top under her dress. Based on these facts, the Court finds that the actions of the individual

---

[2] Assuming that this was an arrest, however, based on the record before it, the Court is of the firm opinion that the trier of fact could not reasonably find probable cause lacking for such arrest.

defendants were justified at the inception of the investigatory detention. Thus, the Court now turns to consideration of whether the scope of the alleged detention was reasonably related to the circumstances justifying the interference.

The entire detention lasted ten (10) to fifteen (15) minutes. From the record before it, the Court is unable to find any evidence on which a jury could reasonably find that the detention was any longer or any more intrusive that was absolutely necessary based on the information provided by the two female customers from the salon. Moreover, the Court has failed to find anything in the record tending to establish that the detention was overly intrusive or that individual defendants could have somehow shortened the investigatory detention. What the individual defendants should have done appears to be what they did do: they sought meaningfully to investigate a reasonable, articulable suspicion of criminal activity. Accordingly, the Court finds that summary judgment is appropriate on this cause of action.

   *B.  Racial discrimination/profiling*

Plaintiff alleges that

> no one identified the plaintiff as the shoplifter. She was singled out under the racial doctrine of 'they all look alike[.]' [ ] The defendants apparently think it is [OK] to harass and intimidate black females. . . . . [S]he felt she had been singled out because she was the only black female in the nail salon. . . . Plaintiff was singled out simply because she was black and without good reason. Moreover, this action commenced because the Defendants racially targeted and profiled the Plaintiff for a crime she did not commit.

(Pl's Mem. Opp. Summ. J. 2, 6.) Plaintiff, however, cannot rest on conclusory allegations such as these when opposing a motion for summary judgment.

Moreover, and as observed by the Sixth Circuit, "Common sense dictates that, when determining whom to approach as a suspect of criminal wrongdoing, a police officer may

legitimately consider race as a factor if descriptions of the perpetrator known to the officer include race." *United States v. Waldon*, 206 F.3d 597, 604 (6th Cir. 2000).

In the case *sub judice*, Plaintiff was the only black female in the salon. Even though defendants Grindstaff and Wright entered the nail salon where Plaintiff was sitting near the door, they left the salon when they received no response to their query as to whether a black female had recently entered the salon in a white tank top and shorts. Only after receiving information from the two customers in the salon that Plaintiff had entered the salon wearing a white tank top did the individual defendants question Plaintiff. Thus, for the reasons set forth above, the Court will enter summary judgment for Defendants on this issue, as well.

      C.      *Defamation and slander per se claims*

To establish a defamation claim, Plaintiff must demonstrate the: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 506 S.E.2d 497 (1998) (Toal, J., concurring in result in separate opinion). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Murray v. Holnam, Inc.*, 344 S.C. 129, 139, 542 S.E.2d 743, 748 (Ct. App. 2001) (citation omitted).

Slander is a spoken defamation. A mere insinuation is as actionable as a positive assertion if it is false and malicious and the meaning is plain. *Timmons v. News and Press, Inc.*, 232 S.C. 639, 644, 103 S.E.2d 277, 280 (1958).

In the instant case, the Court can find no credible evidence to suggest that Defendants accused Plaintiff of a crime. Even if the Court were to find that they insinuated that she had committed the crime, however, there is no evidence in the record on which the trier of fact could reasonably find that such insinuation was done with malice.

Moreover, there is no dispute as to the truthfulness of Defendant Lemmons' statement to Plaintiff that there had been a shoplifting at Target and that an employee was coming to the salon to identify Plaintiff. Accordingly, the Court need not reach the question regarding the alleged publication of any purportedly false statements by the individual defendants. The Court will enter summary judgment for Defendants as to this claim, too.

> D. *Individual defendants qualified immunity in regards to Plaintiff's Section 1983 action*

The individual defendants argue that they are entitled to qualified immunity in connection with the Section 1983 claims since the evidence in the record establishes as a matter of law that they did not violate any clearly established rights of Plaintiff. The Court agrees.

As a general rule, government officials acting reasonably within the scope of their authority are immune from both defending themselves in a legal action and possible subsequent liability. Reasonable conduct is defined as conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test "generally turns on the 'objective legal reasonableness' of the actions," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 819), and ignores considerations of the official's subjective intent. Stated differently, the Court looks to the law itself. The knowledge or intent of the particular official is irrelevant.

In ascertaining whether an official violated clearly established law, the Court looks to the law at the time the alleged offense was committed. *Harlow*, 457 U.S. at 818. The law must be established with some particularity. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. That is, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law, the unlawfulness of the action must be apparent. *Id*. (citations omitted).

The Supreme Court has formulated its test for qualified immunity by balancing competing interests "'in vindication of citizens' constitutional rights and in public officials' effective performance of their duties [.]'" *Anderson*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

> In the interests of accomplishing public goals and encouraging public service, government officials should not be under the burden of defending themselves against every claim raised by an aggrieved individual, but neither should they be given free rein and the power of a governing position to infract the rights of citizens. The resulting objective test satisfies both interests by holding public officials responsible only for conduct that a reasonable official should readily be able to determine unlawful.

*Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992).

In considering the individual defendants' qualified immunity defense, the Court looks to substantive law concerning Plaintiff's investigatory detention as established at the time of the alleged injury to Plaintiff. In so doing, the Court cannot find that the applicable substantive law was so clearly established at the time of the complained incident as to give notice to a reasonable police

11

officer that an investigatory detention in circumstances such as presented herein was unlawful. Therefore, the Court will grant summary judgment to Defendants on this issue.

> E. *Individual defendants' qualified immunity in regards to Plaintiff's state claims*

Section 15-78-70 of the South Carolina Code provides that "An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." S.C. Code Ann. 15-78-70(a). Subsection (b) provides that, "Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. 15-78-70(b).

The Court is unable to find any evidence on which a jury could reasonably find that the individual defendants were either acting outside the scope of their official duties when dealing with Plaintiff or that their actions constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. Accordingly, the Court will grant Defendant's motion for summary judgment on this issue.

> F. *Plaintiff's Section 1983 claims against the City of Anderson and the Anderson Police Department*

Assuming *arguendo* that Plaintiff suffered a deprivation of her constitutional rights, it is well established that a municipality is liable under Section 1983 only if it causes such a deprivation through an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Municipal policy may be found in 1) written ordinances and regulations, *id.* at 690, 2) certain affirmative decisions of individual policymaking officials, *Pembaur v. City of Cincinnati*, 475 U.S.

469, 483-84 (1986), or 3) certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens, *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Outside of such formal decision making channels, a municipal custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks omitted).

No municipality, however, can "be held liable under § 1983 on a *respondeat superior* theory." *Id*. "A plaintiff's theory is most likely to slip into that forbidden realm when she alleges municipal omission--either a policy of deliberate indifference or the condonation of an unconstitutional custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citation omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

"Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Carter*, 164 F. 3d at 218. Instead, a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411. Municipal liability will attach only for those policies or customs that have a "specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Spell*, 824 F.2d at 1390 (internal quotation marks

omitted). The questioned policy or custom cannot merely be the theoretical one of violating citizens' constitutional rights.

> The requirement of a close fit between the unconstitutional policy and the constitutional violation serves three purposes. First, it helps to ensure that a municipality has made "a deliberate choice to follow a course of action . . . from among various alternatives." *City of Canton*, 489 U.S. at 389 . . . (internal quotation marks omitted). Second, it assures that this choice was in fact the "moving force" behind a deprivation of federal rights. *Monell*, 436 U.S. at 694. . . . A careful examination of this "affirmative link" is essential to avoid imposing liability on municipal [decision makers] in the absence of fault and causation.
>
> Third, by requiring litigants to identify the offending municipal policy with precision, courts can prevent trials from straying off into collateral accusations of marginally related incidents. Section 1983 does not grant courts a roving commission to root out and correct whatever municipal transgressions they might discover--our role is to decide concrete cases. Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal [decision maker] caused the violation of the specific federal rights of the plaintiff before the court. Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources. As a practical matter, a case involving inquiries into various loosely related incidents can be an unruly one to try.

*Carter*, 164 F. 3d at 218-19.

Plaintiff has failed to allege that Defendant City of Anderson nor Defendant Anderson City Police Department were directly responsible for her alleged injuries. Moreover, Plaintiff has failed to identify any ordinance, regulation, decision, policy, custom, or omission that caused her alleged injuries. Such failure is fatal to Plaintiff's claims against these two defendants. Thus, the Court will enter judgment accordingly.

## VI.     CONCLUSION

In light of the foregoing discussion and analysis, the Court concludes that all the defendants are entitled to judgment as a matter of law as to all of Plaintiff's claims. Hence, Defendants' motion for summary judgment must be **GRANTED.**

**IT IS SO ORDERED**.

Signed this 14th day of November, 2005, in Spartanburg, South Carolina.

/s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE
